**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MARY KATHRYN ABEGG, )<br>    Plaintiff, )<br> )<br>    v. )<br> )<br>ANDREW M. SAUL, )<br>Commissioner of the Social Security )<br>Administration, )<br>    Defendant. ) | CAUSE NO.: 2:18-CV-181-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Mary Kathryn Abegg on May 2, 2018, and Plaintiff's Opening Brief [DE 15], filed September 27, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 8, 2019, the Commissioner filed a response, and on February 18, 2019, Plaintiff filed a reply.

**I.    Background**

On March 25, 2014, Plaintiff filed an application for benefits alleging that she became disabled on December 21, 2013. Plaintiff's application was denied initially and upon consideration. On February 3, 2017, Administrative Law Judge ("ALJ") Kevin Plunkett held a video hearing, at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 22, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant's date last insured is June 30, 2018.

2.    The claimant has not engaged in substantial gainful activity since December 21, 2013, the alleged onset date.

1

3. The claimant has the following severe impairments: degenerative disc disease, fibromyalgia, ulnar neuropathy, and mitral valve prolapse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except the claimant can frequently feel with the right upper extremity and occasionally feel with the left upper extremity. In addition, the claimant is limited to no climbing of ladders, ropes, or scaffolds and occasional climbing of ramps and stairs, and occasional stooping, kneeling, crouching, or crawling.

6. The claimant is capable of performing past relevant work as an accounting clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 21, 2013, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-*

*Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

III.  Analysis

Plaintiff argues that the ALJ erred in making the RFC determination, erred in reviewing Plaintiff's past relevant work, and erred in evaluating Plaintiff's subjective symptoms.

Plaintiff first argues that the ALJ improperly failed to include handling limitations in the RFC. First, Plaintiff argues that the ALJ mischaracterized the findings of consultative examiner Dr. R. Jao. In 2014, Dr. Jao found that Plaintiff's muscle strength was 5/5 in all major muscle groups, and characterized Plaintiff's grip strength as "normal." AR 361-62. Nonetheless, Dr. Jao's report noted that Plaintiff's grip strength was measured with a dynamometer at 16.3 kg (35.9 lbs) of force in the right hand and 9 kg (19.8 lbs) of force in the left hand, well below average. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (citing Virgil Mathiowetz et al., "Grip and Pinch Strength: Normative Data for Adults," 66 *Archives of Physical Medicine and Rehabilitation*, 69, 71 (1985), www.fcesoftware.com/images/5_Grip_and_Pinch_Norms.pdf (visited March 14, 2019) (study documenting an average grip strength for women aged 60-64 of 55.1 pounds with the right hand with a standard deviation of 10.1 pounds, and 45.7 pounds with the left hand with a standard deviation of 10.1 pounds)); *see also* James R. Roush et al. "Normative Grip Strength Values in Males and Females, ages 50 to 89 years old," *Internet Journal of Allied Health Science and Practice*, Vol. 16-1 at 7 (2018) (finding for women aged 60-64 an average of 56.38 pounds with a standard deviation of 13.41 with the right hand, 50.82 pounds with a standard deviation of 12.23 with the left hand); Johanne Desrosiers et al.,

"Normative Data for Grip Strength of Elderly Men and Women," 49 *American Journal of Occupational Therapy* 637, 640 (1995) (finding for women aged 60-69 an average of 25.3 kg (55.78 lbs) with the right hand, with a standard deviation of 4.8 kg (10.58 lbs); 23.6 kg (52.02 lbs) with the left hand, with a standard deviation of 4.7 kg (10.36 lbs)). The ALJ discussed the aspects of Dr. Jao's report that suggested against disability, but did not discuss Plaintiff's dynamometer results. While the ALJ was not required to find that Plaintiff had decreased grip strength on the basis of the medical tests, he was required to consider the tests, and it is not clear that he did so. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (finding that ALJ erred by "ignor[ing] . . . evidence that undermined her conclusion"); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (reminding that an ALJ must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding").

Further, Plaintiff argues that the medical record contains evidence of continued hand problems that the ALJ did not submit to medical opinion. The ALJ relied on the opinions of two state agency doctors, issued in May and September of 2014, but a nerve conduction study done in September of 2016 showed left ulnar mononeuropathy, right radiculopathy, and a decrease of the left first dorsal interosseous amplitudes. AR 412. The nerve conduction study also showed a decrease in recruitment and chronic neurogenic units in the muscles. *Id.* Additional records from 2016 note numbness in her hand. *See* AR 488, 532. The ALJ added limitations on Plaintiff's "ability to feel" based on the evidence of Plaintiff's ulnar neuropathy, and concluded that Plaintiff could "frequently feel with the right upper extremity and occasionally feel with the upper right extremity," but did not include any limitations on Plaintiff's gripping or handling. The ALJ should have solicited a medical opinion to determine the impact of the newer findings

on Plaintiff's handling. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves"); *see also Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion").

Plaintiff also argues that the ALJ mischaracterized the effectiveness of her treatments. Plaintiff received physical therapy, injections, and medications, among other treatments for her ailments. Listing several of Plaintiff's injections, the ALJ stated that Plaintiff "reported 80 percent pain relief with injections." Overall, the ALJ concluded that Plaintiff's "significant improvement" with pain management and physical therapy "detract[ed]" from the consistency of the allegations concerning the severity of her symptoms, and the treatment history "fails to demonstrate a condition of the degree of severity alleged."

In assessing a claimant's substantive complaints, the ALJ must "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8; *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain[] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence) (citing *Clifford*, 227 F.3d at 870-72).

The ALJ's analysis of the injections was superficial. The record indicates injections beginning in 2012, with varying success. Plaintiff's Botox injections to treat cervical dystonia were reported in 2012 to be "effective." In September 2014, Plaintiff received an epidural steroid injection and subsequently reported "80% relief of her pain for over six weeks." In January 2016, she "present[ed] for a second set in the hopes for prolonged pain relief." In April 2016, she

received a radiofrequency ablation, and the doctor's report noted that after undergoing the same procedure in 2014 "she reported over 80% relief of her pain for 18 months" but "[h]er pain returned without any inciting event." In September 2016, Plaintiff received a lumbar injection and reported "5-6 hours of about 75% pain relief." The record suggests that by 2016, the pain for which Plaintiff sought injections had essentially returned, and Plaintiff was no longer experiencing "significant improvement." The ALJ failed to adequately explain his conclusion that Plaintiff's temporary improvement "detract[ed]" from the consistentcy of the allegations concerning the severity of her symptoms." *See O'Connor-Spinner*, 627 F.3d at 618 (an ALJ "must provide a 'logical bridge' between the evidence and his conclusions"); *see also Scott*, 647 F.3d at 740 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.").

Plaintiff requests reversal with remand for an award of benefits. An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. In this case, the ALJ erred in mischaracterizing evidence with regards to the RFC and Plaintiff's subjective symptoms, but it is not clear what effect this would have on the decision. Although the ALJ's analysis was inadequate, remand for benefits is not appropriate here. *See Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011) (affirming reversal for re-hearing, rather than an award of benefits, where "contradictory inferences could be drawn from the physicians' testimony"); *Campbell v. Shalala,* 988 F.2d 741, 744 (7th Cir. 1993 ("the record is not so clear that we can award or deny benefits on appeal").

The ALJ erred in his evaluation of multiple pieces of evidence in the record, creating problems in both the RFC analysis and the subjective symptom determination. This case is being remanded for the ALJ to conduct a thorough analysis of the medical evidence. As for the

remaining arguments, the Court expresses no opinion about the previous ALJ decision nor the decision to be made on remand. However, the Court encourages the ALJ to build a logical bridge between the evidence in the record and the ultimate conclusions, whatever those might be. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion.").

SO ORDERED this 30th day of July, 2019.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record